IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GABRIEL ALEXIS PEREZ-ESPINOZA,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR HEARING ON DESTRUCTION OF EVIDENCE AND MOTION TO COMPEL<br><br>Case No. 2:21-CR-00361<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Hearing on Destruction of Evidence and Motion to Compel the United States to Reveal the Identity of a Confidential Informant.[1] For the reasons discussed herein, the Court will deny the Motion.

## I. BACKGROUND

Defendant Gabriel Alexis Perez-Espinoza was indicted on September 1, 2021, for Possession of Methamphetamine with Intent to Distribute, Possession of Heroin with Intent to Distribute, and Reentry of a Previously Removed Alien.[2] On September 2, 2021, Magistrate Judge Romero set September 9, 2021, as the discovery deadline. On September 7, 2021, the government produced an initial round of discovery, which included 273 documents of Ping/GPS data and also stated that, "[t]hroughout this case, the United States will provide material discoverable under Rules 16 and 26.2 of the Federal Rules of Criminal Procedure and the Jenks

---

[1] Docket No. 87.

[2] Docket No. 8.

Act without requiring the Defendants to make a specific request for such material."[3] The government continued producing discovery throughout the following two years.

On January 26, 2023, following a subpoena request from Defendant for relevant law enforcement data, the government produced to Defendant's attorney "DEA Report 6." DEA Report 6, dated August 5, 2021, detailed the issuance of a ping warrant on a cell phone ending in 3145 ("phone 3145"), which was applied for and obtained on July 29, 2021. Phone 3145 was suspected to belong to an individual involved in drug trafficking activities and was later found to be in Defendant's possession. The affidavit supporting the ping warrant stated that phone 3145 was in Utah on July 29, 2021. However, DEA Report 6 stated that, after the warrant was obtained, the investigating agents learned via the ping data produced from the warrant that the user of phone 3145 was in California on July 29, 2021, and did not reenter Utah until July 31, 2021. A government confidential informant also informed agents on July 29, 2021, after the warrant was issued, that the user of phone 3145 was in California to buy drugs to resell in Utah.

As a result of the July 29 ping warrant, AT&T issued location data of phone 3145 to investigating law enforcement officers, which allowed them to track the location of the phone and assisted agents in locating and eventually arresting Defendant in Utah County after a search of his vehicle allegedly revealed a distributable amount of illegal substances. DEA Report 6 is the first discovery produced by the government suggesting Defendant was not in Utah on the date the July 29 ping warrant was issued. The ping data was never produced to Defendant, and the DEA has since deleted all of it due to the passage of time. The government and Defendant have not otherwise been able to obtain this data.

---

[3] Docket No. 13, at 2.

As a result of the lost ping data and the government's delayed production of evidence showing that phone 3145 was in California on the date the July 29 ping warrant was issued, Defendant now moves the Court to hold a *Franks* hearing[4] and to impose appropriate sanctions against the government for the lost data and delayed production of DEA Report 6. Defendant also moves the Court to compel the government to disclose the identity of the confidential informant that informed the investigating agents of phone 3145's location on July 29, 2021.

Following Defendant's Motion, counsel for the government represented that he compared discovery in the government's possession with that produced to Defendant and located portions of DEA Report 6 that had not yet been produced. The government produced these documents on October 16, 2023.

## II.  DISCUSSION

### a.  *Franks Hearing*

Pursuant to the Supreme Court's decision in *Franks v. Delaware*,[5] evidence discovered by a search warrant is excluded when "(1) a defendant proves by a preponderance of the evidence the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) after excising such false statements and considering such material omissions the corrected affidavit does not support a finding of probable cause."[6] "If a defendant makes a substantial preliminary showing that both of these elements exist, they are entitled to a *Franks* hearing."[7] Mere allegations are insufficient to

---

[4] Defendant's original Motion did not request a Frank's hearing, but his Reply to the government's Response asserts he is entitled to one in light of the government's admissions.

[5] 438 U.S. 154 (1978).

[6] *United States v. Smith*, 846 F. App'x 641, 648 (10th Cir. 2021) (internal quotation marks and citation omitted).

[7] *Id.* (internal quotation marks and citation omitted).

meet the defendant's burden. "A defendant must produce evidence of the complained-of defects by offering affidavits or sworn or otherwise reliable statements of witnesses."[8]

In *United States v. Smith*, the Tenth Circuit found that the defendant failed to meet his burden to support his right to a *Franks* hearing where he "provided no affidavits or sworn statements of witnesses alleging that the [relevant omission] from the affidavit was a deliberate falsehood or made with reckless disregard for the truth."[9] Defendant's Motion suffers from the same deficiency and, therefore, cannot support a *Franks* hearing. While the government has stipulated that phone 3145 was in California on the same date investigating officers applied for the ping warrant, which wrongly stated it was in Utah, the government further represented that the investigating officers were not aware that phone 3145 was no longer in Utah at the time they applied for the warrant. Defendant has not presented any evidence suggesting investigating officers purposely misrepresented phone 3145's location in their application for the July 29 ping warrant. Instead, Defendant seems to concede that officers were not aware of the phone's California location until after they received the ping warrant[10] and relies on the government's lack of explanation "for why its agents did not check with their confidential informant about the phone's location on [] July 29, 2021"[11] to support his position.

Defendant's argument fails to appreciate that the burden of production is not on the government but is instead on Defendant to produce "affidavits or sworn statements of witnesses" that support his allegations. Defendant has failed to do so and, therefore, has failed to meet his

---

[8] *Id.* (internal quotation marks and citation omitted).

[9] *Id.*

[10] *See* Docket No. 91, at 2 ("The DEA Report 6 confirms that the agents in this case, after obtaining the ping warrant, immediately learned that the phone ending in 3145 was in California—not in Utah, as had been represented in the warrant application.").

[11] *Id.* at 9.

burden to show he is entitled to a *Franks* hearing. Further, Defendant argues that the Court should hold an evidentiary hearing to "resolve issues relevant to whether the United States acted in bad faith in [] losing/deleting the ping data and explained how that evidence would be relevant in a *Franks* hearing."[12] However, in *Smith,* the Tenth Circuit explicitly held that "the information that could be gleaned from a *Franks* hearing cannot be the basis for granting a *Franks* hearing."[13]

Because Defendant has failed to make the requisite showing that the false statement at issue was made deliberately or with reckless disregard for the truth, the Court need not consider whether such false statement was material to the search warrant. However, for completeness, the Court notes that Defendant has also failed to meet his burden as to the materiality element. "In examining whether the excluded information would have been material, we consider whether the affidavit, had it included the omitted information, still would have supported probable cause and thereby justified a warrant."[14] Determining whether probable cause justifies issuance of a warrant requires a "totality-of-the-circumstances analysis."[15] "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."[16]

Defendant argues that because the "particular place" identified in the warrant is Utah and not California, the location of phone 3145 is material to the warrant. However, such a literal

---

[12] *Id.* at 6.

[13] 846 F. App'x at 648.

[14] *United States v. Moses*, 965 F.3d 1106, 1113 (10th Cir. 2020).

[15] *Illinois v. Gates*, 462 U.S. 213, 233 (1983).

[16] *Id.* at 238.

view of this language makes little sense considering the nature of a cell tower ping warrant, which is meant to allow investigators to locate a suspect where they may otherwise be unaware of the location. For example, in *State v. Gonzalez*,[17] the Utah Court of Appeals upheld a ping warrant when the totality of the facts "readily support[ed] the determination that there [was] probable cause to believe [the defendant committed the crime] and that evidence of his crime would be found *in the cell tower location data* for [the defendant's] cell phone."[18] Following such logic, the fact that phone 3145 was in California and not Utah does not defeat the Utah district judge's probable cause finding, as the evidence still supported a fair probability that evidence of a crime "could be found in the cell tower location data."  Accordingly, the Court denies Defendant's Motion for a *Frank's* hearing.

     *b.  Application of Brady and Youngblood*

Defendant also argues he is entitled to a hearing under *Brady v. Maryland*,[19] and *Arizona v. Youngblood*,[20] regarding the government's deletion of the AT&T ping data. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[21] However, in *Youngblood,* the Supreme Court explained that if the government destroys evidence that is not material, but merely could have been helpful to the defendant, then the defendant must make a showing of bad

---

[17] 2021 UT App 83, 494 P.3d 1066, *cert. denied sub nom. State v. Gonzales*, No. 20210599, 2021 WL 6503608 (Utah Dec. 8, 2021).

[18] *Id.* ¶ 30 (emphasis added).

[19] 373 U.S. 83 (1963).

[20] 488 U.S. 51 (1988).

[21] *Brady*, 373 U.S. at 87.

faith on the part of the police in its failure to preserve such evidence to prove a due process violation.[22]

The parties dispute the applicability of *Brady* and *Youngblood* to the issue at hand. Circuit courts are not in agreement as to whether *Brady/Youngblood* "even apply at the motion to suppress stage."[23] However, the parties agree that the Tenth Circuit has "hinted" that it would find the answer to be "no."[24] Despite acknowledging the Tenth Circuit's position, Defendant cites to a Ninth Circuit decision in support of his argument that "the *Youngblood* framework applies to the destruction of evidence that is necessary to impeach material allegations in an affidavit for a ping warrant."[25]

The Court declines to follow Defendant's suggested approach of applying *Youngblood* to the government's failure to preserve evidence to the suppression issue at hand, which goes against the Tenth Circuit's suggested position. Further, even in applying the *Youngblood* framework, there is little to suggest a due process violation on the part of the government in failing to preserve ping data, where the data has since been described in reports produced to Defendant,[26] and would not have been apparently exculpatory, as is necessary to support a

---

[22] *Youngblood*, 488 U.S. at 58.

[23] *United States v. Muhtorov*, 20 F.4th 558, 623 (10th Cir. 2021), cert. denied, 143 S. Ct. 246, 214 L. Ed. 2d 105 (2022).

[24] *Id.* at 623 n.41 (citing *United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 n.2 (10th Cir. 2013) ("Suppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is material either to guilt or to punishment.").

[25] Docket No. 87, at 14.

[26] *See United States v. Harry*, 816 F.3d 1268, 1276 (10th Cir. 2016) ("The failure to preserve the evidence violates due process if the evidence was . . . 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'") (quoting *California v. Trombetta,* 467 U.S. 479, 489 (1984)).

finding of bad faith.[27] Accordingly, application of *Youngblood* to address the government's deletion of the ping data would not change the Court's determination regarding the appropriateness of holding a *Franks* hearing.

 *c. Bad Faith/ Sanctions*

 Defendant next argues that he is entitled to a hearing pursuant to Fed. R. Crim. P. 16 and the Court's inherent authority to determine if the government should be sanctioned for its failure to timely produce the discovery at issue and their failure to preserve the ping data, which is now lost permanently. Rule 16(d)(2) provides that if a party fails to comply with Rule 16, "the court may . . . enter any . . . order that is just under the circumstances."

> When the government fails to comply with a discovery order, the factors the district court should consider in determining if a sanction is appropriate are (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.[28]

"[T]hese three factors should merely guide the district court in its consideration of sanctions; they are not intended to dictate the bounds of the court's discretion."[29] However, "[t]o support a finding of prejudice, the court must determine that the delay impacted the defendant's ability to prepare or present its case."[30]

---

[27] *See United States v. Harry*, 927 F. Supp. 2d 1185, 1222 (D.N.M. 2013) ("The second prong of *Arizona v. Youngblood,* the inquiry into bad faith, must necessarily turn on the government's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.") (quoting *United States v. Bohl,* 25 F.3d 904, 911 (10th Cir. 1994) (internal quotation marks omitted)).

[28] *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988).

[29] *Id.*

[30] *United States v. Red Elk*, 185 F. App'x 716, 723 (10th Cir. 2006) (quoting *United States v. Golyansky*, 291 F.3d 1245, 1250 (10th Cir. 2002)).

Based on consideration of the above factors, the Court does not find good cause to hold a hearing on the issue or impose sanctions at this time. First, while the government curiously decided not to substantively respond to Defendant's arguments for sanctions or provide the Court with an explanation regarding its failures to timely provide the entirety of DEA Report 6 and its failure to preserve the ping data, nothing before the Court suggests bad faith on the part of the government. As discussed, any exculpatory value would not have been apparent at the time the ping data was destroyed, and the government has not disputed that phone 3145 was in California when the warrant was issued.

Second, the only specific prejudice Defendant alleges is that his counsel spent "so much time and effort just to have the United States produce, at the eleventh hour, a document in its possession since August of 2021."[31] However, Defendant has not clearly alleged how this has impacted his "ability to prepare or present its case" in light of the government's stated willingness to stipulate that phone 3145 was not in Utah on the date the warrant was issued. Further, even with the stipulation, the Court has ruled against Defendant's argument for hearings under *Franks* and *Youngblood*. Therefore, there is no prejudice caused by the government's delay of production in relation to the resulting delay in Defendant's *Franks* motion.

While the Court does not find sanctions to be appropriate at this time, the Court does find it appropriate to admonish the government for its failure to "provide material discoverable under Rules 16 and 26.2 . . . without requiring the Defendants to make a specific request for such material" as it promised to do in its First Certificate of Compliance[32] and its failure to retain all discoverable material relevant to the case at hand.

---

[31] Docket No. 91, at 4.

[32] Docket No. 13, at 2.

9

### d. Disclosure of Confidential Informant

"Where the government opposes disclosure of the identity of an informant, a trial judge must balance the public's interest in protecting the flow of information against the individual's right to prepare [their] defense."[33] "[T]he defendant must present more than mere speculation about the possible usefulness of an informant's testimony."[34] Further, the Court need not order disclosure "where the information sought . . . would be merely cumulative, or where the informant is not a participant in or a witness to the crime charged."[35]

Defendant argues that the Court should order the government to disclose the identity of the government's confidential informant because the confidential informant's testimony "is very likely helpful to the defense and essential to allowing [Defendant] to meet his burden" to establish the false statement in the affidavit supporting the ping warrant was made with reckless disregard for the truth under *Franks*.[36] Specifically, Defendant wishes to question the confidential informant regarding "whether and when he told the agents that the phone in 3145 frequently went out of the State of Utah."[37]

The government has agreed that the ping data showed phone 3145 was in California on the date the arrest warrant was sought and obtained. When and if the confidential informant informed investigators that the owner of phone 3145 frequently left Utah seems to have minimal value to Defendant, particularly in light of the Court's findings in this Order regarding the materiality element under its *Franks* analysis. Further, it seems highly unlikely that an individual

---

[33] *United States v. Morales*, 908 F.2d 565, 567 (10th Cir. 1990).

[34] *Id.*

[35] *Id.*

[36] Docket No. 91, at 15–16.

[37] *Id.* at 16.

with numerous communications with government agents would be able to remember the precise nature and time of conversations occurring two-and-a-half years ago. The Court finds that the Defendant's arguments in support of disclosure are "mere speculation about the possible usefulness" of the confidential informant's testimony. Further, the Court finds that the testimony would likely be largely cumulative of the information provided to Defendant. Therefore, the Court finds that the interest in disclosure of the confidential informant does not outweigh the public interest in protecting the free flow of information.

III.  CONCLUSION

It is hereby

ORDERED that Defendant's Motion for Destruction of Evidence and Motion to Compel the United States to Reveal the Identity of a Confidential Informant (Docket No. 87) is DENIED.

DATED this 15th day of December, 2023.

BY THE COURT:

_____
Ted Stewart
United States District Judge

11